IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, )<br>       Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL KELLY, )<br>       Defendant. ) | CIVIL ACTION NO. 3:05-276<br><br>JUDGE KIM R. GIBSON |

**MEMORANDUM OPINION & ORDER**

**Gibson, J.,**

**I. INTRODUCTION**

Now before the Court is Plaintiff's Motion for Summary Judgment (Document No. 43) and supporting documents. Allstate Insurance Company ("Plaintiff" or "Allstate") filed its Complaint on June 7, 2005, stating seven claims and seeking a declaration that it owed no duty to defend or indemnify its insured, Michael Kelly ("Defendant" or "Kelly"); an award of damages or reimbursement for expenses, costs, and attorneys' fees; and treble damages under Pennsylvania's Insurance Fraud Statute, 18 PA. C.S.A. § 4117 ("PIFS"). Document No. 1. Defendant filed his Answer on October 19, 2005. Document No. 15. Plaintiff's subsequent motion for partial judgment on the pleadings was uncontested, however, and the Court found against Kelly on four counts. Document No. 28. Judgment was thereby entered in Allstate's favor on Count I (requesting that the Court declare Defendant's insurance policy void *ab initio*), Count II (seeking a declaration that Defendant's material misrepresentations rescinded the insurance policy), Count III (asking the Court for a declaration that Plaintiff did not owe Defendant certain duties because of the latter's material misrepresentations), and Count V (seeking a declaration

1

that Plaintiff did not owe Defendant certain duties because of the business exclusions contained in the insurance policy). *Id.*

Thus, only three claims remain unresolved in this lawsuit: Count IV, seeking a declaration that Defendant's violation of the Increase of Hazard Exclusions in his insurance policy exempts Allstate from any liability; Count VI, seeking a declaration that Defendant's violation of the Intentional Conduct Exclusions in his insurance policy exempts Plaintiff from any liability; and Count VII, seeking monetary relief under the PIFS. Allstate filed the motion *sub judice* on May 1, 2006, requesting summary judgment on Count VII and an award of $39,506.38 under Counts, I, II, III, V, and VII. Document No. 44, p. 10. Plaintiff has apparently discarded any interest in treble damages and consents to the dismissal of Counts IV and VI if it is awarded summary judgment as to Count VII. Document No. 43, p. 2 n.3 & p. 6 n.4. Defendant has not filed any opposition to the motion.

## II. FACTUAL HISTORY[1]

On August 9, 2004, Plaintiff purchased the property located at 2006 7th Avenue, Altoona, Pennsylvania 16602, for $7,500.00 ("the Altoona Property"). In October of that year, Kelly obtained from Defendant an Allstate Deluxe Homeowners Policy covering the Altoona Property, signing the policy application and dating it October 12, 2004. The application contained the following language:

> I [Kelly] have read this entire application, including the binder provision, before

---

[1] Plaintiff has not complied with Local Rule 56.1, which requires that a litigant moving for summary judgment separately file a statement of material facts that it contends are undisputed. This requirement is meant to narrow for the Court's review the particular factual issues that remain in dispute; a party is deemed to have admitted a particular material fact it does not expressly deny. L.R. 56.1(E). In this instance, Defendant's failure to oppose the motion for summary judgment renders *de minimis* the procedural defects in Plaintiff's motion, which the Court hereby waives. Unless otherwise noted, this section of undisputed facts relies on the consistencies between the Complaint and Answer, as well as the unrebuked evidence attached to Allstate's motion. Although no indentations or marks are used, the Court has, where appropriate, directly quoted the language of the Parties.

2

> signing.
>
> . . .
>
> In the event of any misrepresentation or concealment made by me [Kelly] or with my knowledge in connection with this application, the Company [Allstate] may deem this binder and any policy issued pursuant to this application, void from its inception.

According to the application, the Altoona Property contained three family units and had a purchase price of $149,749.00. The purchase date listed on the application is October 2004. The application also identifies Kelly's occupation as a laborer and states that no one residing in the subject property smoked cigarettes. Additionally, the application indicates that Defendant had made no insurance claims in the last five years and that, within the same time frame, Kelly had not "been rejected, cancelled or nonrenewed insurance similar to the coverage applied for in this application." Nowhere in the application did Defendant represent that he had purchased the Altoona Property for $7,500 in August 2004, that the building was in fact an illegal five-unit boarding house, that he had filed two insurance claims since 2002, that at least one other insurer refused to insure the Altoona Property, or that Kelly was a heavy smoker.

Defendant claims in his Answer, however, that he relayed to the Customer Service Representative assisting with his application the true date and price of purchase, two unrelated insurance claims he had recently filed, and that the Altoona Property was a five-unit rental property. Document No. 15, ¶¶ 15, 20, 25. He also claims to have told the representative of his smoking habit and that he was in the business of buying and selling real estate. *Id.* at ¶¶ 16, 22.

Based upon the representations in Plaintiff's application, Allstate issued the Deluxe Homeowners Policy ("the Policy"), effective at 3:06 p.m., October 12, 2004. The policy contained limits of $149,749 for the property's structure, $44,924 for personal property, and $100,000 of liability

3

protection, in exchange for an annual premium of $1,067.00.

The Policy explicitly excluded from coverage certain types of injury and damage. Most relevant for immediate purposes are the following: "We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person." Document No. 48, p. 18; "We do not cover bodily injury arising out of the past or present business activities of an insured person.... We do not cover bodily injury to any person on the insured premises because of a business activity or professional service conducted there." *Id.* at 20. The Policy defined business as "any full or part-time activity of any kind engaged in for economic gain and the use of any premises for such purposes" or "any property rented or held for rental by an insured person." Document No. 47, pp. 12-13.

On November 18, 2004, a fire ignited at the Altoona Property, resulting in the deaths of two tenants and inflicting significant property damage on both Kelly's building and a neighboring structure. Following the fire, Defendant submitted two claims for property damage as well as items allegedly stolen from the Altoona Property in the days following the fire. Allstate subsequently issued claim numbers 5132867853 and 5132880559.

On November 22, 2004, Allstate and Kelly signed an Advance Payment Agreement, under which Plaintiff paid Defendant $3,000.00 and Defendant agreed to repay the money in the event his claims were not honored. Pursuant to a cancellation clause, Allstate cancelled the Policy, effective January 3, 2005, and refunded to Kelly any premium it had received.

On February 16, 2005, Kelly testified under oath that at the time of the fire he used the Altoona Property for economic gain and that his sole source of income was from the rental payments made by tenants residing there. The Altoona Property had always been used as a rental property, before and after

4

Defendant purchased it. It was used continuously as a rental property after Kelly's purchase, including at the time of the fire, and Defendant had written leases with his tenants. Kelly also testified that he "pretty much" stopped working when he purchased the Altoona Property.

On May 24, 2005, counsel for Allstate sent Defendant's representative a letter offering to advance Kelly the reasonable costs of demolishing the Altoona Property, but reserved all rights to repayment pending the ultimate resolution of Defendant's insurance claims. On August 16, 2005, Allstate issued a check for $10,600.00 that listed claim number 5132867853 and, as payee, "Michael Kelly and Alternative Demolition 2006 7th Ave. Altoona, Pa 16602." Document No. 43, Exh. E. Plaintiff indicates that the amount was paid for costs associated with the demolition of the Altoona Property. Document No. 43, ¶ 33.

Allstate also avers—and Defendant has not disputed—that aside from the $3,000 advance payment and the $10,600 in demolition costs, it has "paid $25,906.38 so far in expenses, attorneys' fees, and other costs incurred as a result of Kelly's conduct, acts, and fraud." *Id.* at ¶ 34. Plaintiff thus estimates its damages so far at $39,506.38. *Id.* at ¶ 38.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citation omitted). Material factual disputes are those "that might affect

the outcome of the suit under governing law." *Id.* On a motion for summary judgment, the moving party must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To defeat the motion, "an adverse party may not rest upon the mere allegations or denials of his pleading." *Id.* at 321 n.3. Instead, it must use evidence to "set forth specific facts showing that there is a genuine issue for trial." *Id.* "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216. That Defendant has not opposed the motion *sub judice* does not absolve Allstate from meeting its burden under FED. R. CIV. P. 56(c). *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006); *United States v. 5800 SW 74th Ave., Miami Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 n.1 (2d Cir. 2001).

## IV. ANALYSIS

### A. The Insurance Fraud Claim

Under the PIFS, a person "may not knowingly and with intent to defraud any insurance company, self-insured or other person file an application for insurance containing any false information, or conceal for the purpose of misleading information concerning any fact material thereto." 18 PA. C.S.A. § 4117(b)(4). Aggrieved insurers may "recover compensatory damages, which may include reasonable investigation expenses, costs of suit and attorney fees. An insurer may recover treble damages if the court determines that the defendant has engaged in a pattern of violating this section." 18 PA. C.S.A. § 4117(g).

An insured violates the PIFS "by: 1) presenting false, incomplete or misleading statements to [the insurer]; 2) that were material to the claim; and 3) knowingly and with an intent to defraud." *Hepps v. Gen. Am. Life Ins.*, No. 95-5508, 1998 U.S. Dist. LEXIS 13795, at *10 (E.D. Pa. Sept. 3, 1998). Fraud is presumed where the insured has knowingly provided a false statement. *Shafer v. John Hancock Mut. Life Ins. Co.*, 189 A.2d 234, 236 (Pa. 1963) (citing *Kizirian v. United States Life Ins. Co.*, 119 A.2d 47, 49-50 (Pa. 1956)). "It is sufficient to show that they were false in fact and that insured knew they were false when he made them." *Evans v. Penn Mut. Life Ins. Co.*, 186 A. 133, 138 (Pa. 1936).

> Even if the insured does not admit knowledge of the statements' falsity at the time they were made, fraudulent intent may be inferred if the facts show the insured had presumptive knowledge. "Where it affirmatively appears from sufficient documentary evidence, that . . . false answers are shown to have been given by the insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer."

*Hepps*, 1998 U.S. Dist. LEXIS 13795, at *11 (quoting *Derr v. Mut. Life Ins. Co.*, 41 A.2d 542, 544 (Pa. 1945) (holding that circumstantial evidence can establish that the insured knew the falsity of his representations)).

The extent of the inconsistencies between the application and the truth that Defendant eventually admitted provides sufficient evidence to establish that Kelly knowingly presented false information to Allstate. The application states that no one at the Altoona Property smoked. Document No. 49, p. 10. In reality, Defendant, who lived at the property, admits to a habit that started when he was fifteen years old and now causes him to smoke three packs of cigarettes each day. Document No. 50, p. 13. According to his insurance application, Kelly had not claimed any insurance losses at any residence in the past five years. In his sworn statement taken four months later, Defendant acknowledged recovering

7

around $40,000 in two insurance claims filed between 2002 and 2003. Document No. 50, pp. 17, 22-25, 27. Kelly also admitted that he purchased the property before October 2004 for $7,500 and that its value at the time was "[p]robably not much more than what I paid for it. . . ." Document No. 50, p. 19. Defendant admits never having received an appraisal on the property. *Id.* Nonetheless, Kelly's insurance application states that the Altoona Property was purchased in October 2004 for $149,749 and that its current market value was the same. Document No. 49, p. 12. While the application states that the total number of residents in the Altoona Property was one, Kelly admitted that the building's use as a rental property predated his purchase, that he used the building as a rental property, that its use as a rental property had been continuous, and that he had written leases with his tenants. *Compare* Document No. 49, p. 10 *with* Document No. 15, ¶¶ 143-49. The application states that the Altoona Property consisted of three family units. Document no. 49, p. 12. In reality, it was a five-unit boarding house. Document No. 15, ¶ 25.

It is also clear from the evidence that Kelly signed his application for the Policy. Document No. 49, p. 16; Document No. 15, ¶ 11. The nature and extent of the material representations made in that document, particularly regarding Defendant's habits and purchase of the Altoona Property, are such that Defendant must have known their falsity, triggering the presumption of fraud.

Kelly states in his Answer that he was not given the opportunity to review the application, and that certain information therein contradicts what he told the claims representative assisting him. Document No. 15, ¶¶ 11-28. There is no evidence to support these claims, however, and a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e). The Court has received from Plaintiff ample evidence that Kelly made

8

intentional misrepresentations in his insurance application. Defendant has not countered with any evidence that casts doubt on Allstate's evidence or suggests that there is a genuine issue for trial. Summary judgment in Plaintiff's favor as to Count VII is therefore appropriate as a matter of law.

## B. The Damages Claim

It is undisputed that Allstate has paid out $39,506.38. Document No. 43, Exhs. D, E & F; Barrett Aff., Document No. 52. This total represents monies paid out in advance of the claim settlement, to cover the demolition costs associated with the subject property, and for attorneys' fees and costs in investigating and litigating the merits of Defendant's claims. Document No. 43, Exhs. D, E & F; Barrett Aff., Document No. 52.[2]

There is no doubt that Allstate is entitled to recover all such costs and payouts. Plaintiff expressly reserved the right to collect from Defendant the $13,600 paid out in advance payments and demolition expenses. Furthermore, the PIFS expressly allows for the recovery of "reasonable investigation expenses, costs of suit and attorney fees." 18 PA. C.S.A. § 4117(g). *See also Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 220 (M.D. Pa. 2003) (awarding "reasonable investigative expenses, costs of suit and attorney's fees to the defendant as the prevailing party in the insurance fraud [counter]claim" under the PIFS). The Court is reluctant however, to grant Plaintiff over $25,000 of investigation and legal expenses in an unopposed motion for summary judgment supported only by the

---

[2] Though the PIFS allows treble damages, the Court will not consider that option, for which Plaintiff's Motion makes no argument. In passing, however, the Court notes thata series of misrepresentations on a single application form that leads to two claims may not constitute a pattern of fraud within the meaning of § 4117. *See Saracco v. Vigilant Ins. Co.*, No. 99-3502, 2000 U.S. Dist. LEXIS 1685, at *24 (E.D. Pa. Fed. 22, 2000) ("[M]isrepresentations regarding the same subject matter or claim generally do not constitute a 'pattern'." (citing *Parasco v. Pacific Indem. Co.*, 920 F. Supp. 647, 657 (E.D. Pa. 1996))).

affidavit of a senior claims service adjuster. Courts awarding attorneys' fees commonly employ the lodestar method and the PIFS offers no reason to adopt a different approach here. *See Valenti*, 243 F. Supp. 2d at 205-15 (using the lodestar to calculate legal fees awarded under the PIFS); *Majestic Box Co. v. Reliance Ins. Co.*, No. 96-8118, 1998 U.S. Dist. LEXIS 12627, **8-14 (E.D. Pa. Aug. 10 1998) (same). Plaintiff should thus differentiate between investigation and litigation costs, account for each in accordance with lodestar principles, and provide supporting evidence. Defendant will be given the opportunity to object to Allstate's accounting.

## V. CONCLUSION

For the foregoing reasons, the Court shall grant Allstate summary judgment on its claim for insurance fraud, stated in Count VII of the Complaint. Consistent with Plaintiff's request, the Court will also dismiss Counts IV and VI. Allstate shall be awarded $13,600 in damages, with additional fees and expenses to be decided upon the merits of Plaintiff's lodestar presentation, including appropriate documentation of investigation expenses.

An appropriate Order follows.

**AND NOW**, this 31st day of January, 2007, upon consideration of Plaintiff's Motion for Summary Judgment (Document No. 43), **IT IS HEREBY ORDERED** that the Motion is **GRANTED**. The Clerk of Court shall enter judgment against Defendant and in favor of Plaintiff as to Count VII of Plaintiff's Complaint in the amount of $13,600.00.

**IT IS FURTHER ORDERED** that Counts IV and VI of Plaintiff's Complaint are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's brief concerning the calculation of its investigation expenses and legal fees and costs shall be filed **on or before March 2, 2007**. Any objection Defendant has to that calculation must be filed **on or before March 16, 2007**.

BY THE COURT:

*[signature]*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

Cc: **All counsel of record**

11